Murray D. Feldman (ISB #4097)
Alexandra S. Grande (ISB #9566)
HOLLAND & HART LLP
800 West Main Street, Suite 1750
P.O. Box 2527
Boise, Idaho 83701-2527
E-mail:  mfeldman@hollandhart.com
        asgrande@hollandhart.com

Attorneys for Plaintiff-Petitioner David Neil Smith

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID NEIL SMITH, Mundford, Norfolk, England, United Kingdom, | Case No. |
| Plaintiff-Petitioner, | **VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD PURSUANT TO THE HAGUE CONVENTION** |
| v. | |
| VICKIE MICHELLE SMITH, Caldwell, Idaho, United States of America, | |
| Defendant-Respondent. | |

## Introduction

1.  Plaintiff-Petitioner David Neil Smith ("Mr. Smith" or "Petitioner") is a resident and citizen of the United Kingdom of Great Britain and Northern Ireland ("United Kingdom"). He brings this action to secure the return of his 15-year-old son D.M.S.[1] (or the "Child"), who has, without Petitioner's consent or acquiescence, been wrongfully removed to the United States and retained in the District of Idaho by the Child's mother, Respondent Vickie Michelle Smith.

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2(a) and District Local Rule Civ. 5.5(a), the Child's full name and birth date are not included in this Petition.

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 1**

2. Mr. Smith brings this Petition pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Convention")[2] and the International Child Abduction Remedies Act ("ICARA")[3].

3. The Convention entered into force between the United States of America and the United Kingdom on July 1, 1988, and remains in force at all relevant times.[4] The purposes of the Convention are to secure the immediate return of a child wrongfully removed or retained in any Contracting State, and to ensure that the right of custody and access under the law of one Contracting State is respected in other Contracting States. *See* Convention, art. 1. The Convention recognizes the urgent nature of these proceedings and anticipates an expedited hearing of Convention cases. *See* Convention, art. 11. The Convention is not meant to decide the "underlying merits of a custody dispute but whether a child should be returned to a country for custody proceedings under that country's domestic law." *Papakosmas v. Papakosmas*, 483 F.3d 617, 621 (9th Cir. 2007).

4. Under the Convention the removal or retention of a child is "wrongful" when:

> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the Child was habitually resident immediately before the removal or retention; and
>
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, art. 3.

---

[2] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.A. at 98, reprinted in 51 Fed. Reg. 10493 (1986). The Convention was enacted at The Hague on October 28, 1980. The Convention is available on Westlaw at 1988 WL 411501.

[3] 22 U.S.C. §§ 9001 – 9011 (1995).

[4] The United States and the United Kingdom are signatories to the Hague Convention; both nations ratified the treaty on July 1, 1988. *See* https://travel.state.gov/content/childabduction/en/country/hague-party-countries.html.

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 2**

5.　　In considering a petition for return, the Convention authorizes a federal district court to determine the merits of the wrongful removal or retention claim, but does not permit the district court to consider the merits of any underlying custody dispute. *See Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001).

6.　　The United States Court of Appeals for the Ninth Circuit has instructed that a court applying Article 3 of the Convention must answer the following four questions:

> (a)　　When did the removal or retention at issue take place?
>
> (b)　　Immediately prior to the removal or retention, in which state was the child habitually resident?
>
> (c)　　Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence?
>
> (d)　　Was the petitioner exercising those rights at the time of the removal or retention?

*Mozes*, 239 F.3d at 1070.

## Jurisdiction and Venue

7.　　This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) (jurisdiction of courts under the Convention) and 28 U.S.C § 1331 (federal question jurisdiction).

8.　　Venue in this Court is proper pursuant to 22 U.S.C. § 9003(b) (petitions under the Convention) and 28 U.S.C. § 1391(b) because the Child, on information and belief, is currently located in or around Caldwell, Idaho.

## Statement of Facts

9.　　Petitioner David Neil Smith and Respondent Vickie Michelle Smith are the parents of two children: D.M.S. (age 15) and D.O.S. (age 16). Respondent began residing with the Petitioner in the United Kingdom in March of 1997 and Petitioner and Respondent were soon thereafter married in the County of Kent, United Kingdom on May 24, 1997. A true and correct

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 3**

copy of a certified copy of the Smiths' marriage certificate dated August 4, 2017, is attached hereto as Exhibit A.

10. Petitioner was born in, and is a citizen and resident of the United Kingdom. Mr. Smith is a Captain serving in Her Majesty's Army, and has served as a member of the British Armed Forces since 1987. Respondent was born in Portland, Oregon, and is a citizen of the United States. As a result of being born to a British father and American mother, D.M.S., along with his brother, D.O.S., hold dual citizenship. Petitioner and Respondent's younger son, D.M.S., was born in Colchester General hospital in the County of Essex in the United Kingdom. A true and correct copy of D.M.S.'s British Certificate of Birth and the Consular Report of a Birth Abroad of a Citizen of the United States of America is attached hereto as Exhibit B.

11. Petitioner and Respondent's marriage broke down in approximately July of 2015 when Respondent informed Petitioner that it was her intention to return to the United States and to take the children with her. Mr. Smith objected to the relocation of his children to the United States and presented a petition for divorce to the Norwich Family Court, Sitting in Kings Lynn on October 12, 2015. A decree nisi was pronounced on February 11, 2016. Thereafter, Mr. Smith made an application to the Family Court Sitting in Norwich seeking an order that the children should live with him and not be removed from the jurisdiction of the Court on February 15, 2016. A true and correct copy of the "Application under section 8 of the Children Act 1989 for a child arrangements, prohibited steps, specific issue order or to vary or discharge or ask permission to make a section 9 order" submitted by Mr. Smith to the Family Court Sitting at Norwich is attached hereto as Exhibit C. Around that same time, Mr. Smith arranged to be posted at Royal Air Force Base Marham for the remainder of his military service so that he could care for the children.

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 4**

12. In response to Mr. Smith's application to the Family Court Sitting at Norwich, Respondent made a cross-application for leave to remove D.M.S. and D.O.S. from the United Kingdom on a permanent basis. A true and correct copy of the Family Court at Norwich's Order dated July 20, 2016, and recording that "the mother Vickie Michelle Smith has applied for Child Arrangements Oder [sic] an Order that she should have leave to remove the children from the jurisdiction" is attached hereto as Exhibit D.

13. In connection with those proceedings, the Court held a "Final Hearing" regarding custody of D.M.S. and his brother, D.O.S on October 12, 2016. A true and correct copy of the order on the "Final Hearing" dated October 12, 2016 is attached hereto as Exhibit E ("October 12, 2016 Child Arrangement Order"). In connection with that hearing, the Family Court Sitting at King's Lynn entered the following Orders relevant to this proceeding:

    1. The Mother's Application for a specific issue order for leave to permanently remove the boys from the jurisdiction is dismissed.

    2. The children D.O.S. dob [redacted] and D.M.S. dob [redacted] shall live with their Mother.

    3. The Mother must make sure the children spend time with or have contact with their Father as follows: -

        i) in term time: -

            a) alternative weekends from after school on Friday to start of school on Monday commencing the first weekend of each term

            b) on one day after school from 5.30pm until 8pm, provisionally Wednesdays, but to be varied subject to the boys' extracurricular commitments.

            c) each full half term holiday.

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 5**

      ii)      in the main school holidays, when the term time arrangement is suspended :-

            a)    two consecutive weeks in each summer holiday period

            b)    two consecutive weeks at Christmas in alternate years

            c)    two consecutive weeks at Easter in alternate years

            d)    in respect to Christmas and Easter, the boys shall spend the Easter period with the parent they did not spend Christmas with.

      iii)     such other or alternative arrangements at the parties agree between themselves.

14. After the issuance of the October 12, 2016 Child Arrangement Order, the Petitioner, Respondent, and their sons continued to live together in the family home for many months. On March 21, 2017, Mr. Smith returned to the family home to find that Respondent had left the home and had taken D.M.S. and D.O.S. with her. Concerned that Respondent would attempt to remove the children to the United States, Mr. Smith made further application to the Family Court Sitting at Norwich.

15. On March 30, 2017, Mr. Smith and Respondent appeared before the Family Court Sitting at Norwich. A true and correct copy of the "Final Order (CAP 04)" entered by the Family Court Sitting at Norwich, and dated March 30, 2017, is attached hereto as Exhibit F ("March 30, 2017 Final Order"). Both Petitioner and Respondent were represented by counsel at that proceeding. *Id.* at 1. During that proceeding, Respondent further assured the court through her solicitor that she would not remove the children from the jurisdiction without the agreement of Mr. Smith, and such assurance was recorded on the face of the March 30, 2017 Final Order. Ex. F at 2.

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 6**

16. Per that same March 30, 2017 Final Order, the Respondent agreed to make the children available to visit/stay with their father as set out in the October 12, 2016 Child Arrangement Order, and in addition granted Mr. Smith the right to have contact with the children from 1730 on March 31, 2017 when the children were to travel to Mr. Smith's home by bus to 0845 on Monday April 3, 2017 when Mr. Smith was to deliver the children to a McDonald's at Thetford. *See id.* However, only D.O.S. came to Mr. Smith's home by bus. Respondent kept D.M.S. with her in violation of the March 30, 2017 Final Order.

17. On May 8, 2017 Petitioner and Respondent's divorce was made final pursuant to a Decree Absolute entered by the Family Court at Norwich. A true and correct copy of the decree dissolving the marriage is attached hereto as Exhibit G.

18. On May 15, 2017, Mr. Smith's solicitor sent a letter to the Respondent's solicitors regarding their continued failure to respond to previous correspondence and reminding them that should their client (Respondent) remove either child from the jurisdiction, it would be regarded as an abduction as Mr. Smith did not consent to removal of either child. A true and correct copy of that correspondence dated May 15, 2017 is attached hereto as Exhibit H.

19. On June 2, 2017, the Respondent informed Mr. Smith that she had taken D.M.S. to the United States and would not be coming back. Mr. Smith has never acquiesced to or consented to the removal or retention of D.M.S. outside of the United Kingdom. Under the October 12, 2016 Child Arrangement Order, D.M.S. was to primarily reside with the Respondent, but was also to reside with Mr. Smith from time to time in accordance with the terms described in the Order. *See* Ex. E. And under the terms of the March 30, 2017 Final Order, Respondent was not allowed to remove the children from the jurisdiction without Mr. Smith's agreement. *See* Ex. F. Mr. Smith did not give his agreement for D.M.S. to travel to the United States. D.M.S.'s removal to and retention in the United States is in violation of the

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 7**

terms of both the October 12, 2016 Child Arrangement Order and the March 30, 2017 Final Order.

20. Prior to his removal from the United Kingdom by the Respondent, D.M.S. had lived his entire life as a resident and citizen of the United Kingdom. D.M.S. has never lived in the United States, and prior to his removal from the United Kingdom on or about May 30, 2017, had not visited the United States since approximately 2004 when he was still an infant.

21. All of D.M.S's formal education has, until the time of his wrongful removal, occured in England or in schools run by the Service Children's Education, an organization of the United Kingdom's government responsible for the education of British Armed Forces families. For the 2016/2017 school year, both D.M.S. and his older brother, D.O.S., attended Iceni Academy in Methwold, Norfolk. A true and correct copy of correspondence from the Assistant Principal at the Iceni Academy confirming that D.M.S. was a student there from March 15, 2013 through June 12, 2017 is attached hereto as Exhibit I. Prior to his abduction to the United States, D.M.S was due to enter his final year of secondary education and would be taking his exams to obtain General Certificates of Secondary Education (GCSE examinations are taken by most pupils at the end of compulsory school education year 11 in England). D.M.S. has been prevented from continuing his education at Iceni Academy as ordered in the October 12, 2016 Child Arrangement Order: "That it is the intention of both parents that accommodation arrangements will be made to allow the boys education to continue at Iceni Academy unless agreed otherwise by both parents." Ex. E at 3.

22. In light of the Respondent's representation that she would not return D.M.S. to the United Kingdom voluntarily, Mr. Smith initiated proceedings before the High Court of Justice in London, Family Division, Case No: NR17P00621, seeking an order that the Respondent must return D.M.S. to the jurisdiction of England and Wales. The Respondent did not appear in those

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 8**

proceedings and the Court could not determine that she had received formal notice of the hearing.  Under these circumstances, the Court granted Mr. Smith leave to restore his application for return of the child on notice to the Respondent.  In that same order, a true and correct copy of which is attached hereto as Exhibit J, the Court found that it was satisfied that D.M.S. was habitually resident in England and Wales.  The Court further noted that:

> (1) the respondent's application to remove the child and his brother D.O.S. (b.[date of birth redacted] permanently from the jurisdiction was dismissed by District Judge Reeves on 12th October 2016;
>
> (2) that on the 30th March 2017 the respondent further assured the court through her solicitor that she would not remove the children from the jurisdiction without the agreement of the applicant father such assurance being recorded on the face of the order;
>
> (3) that it appears that the respondent is in breach of various Child Arrangement Orders made on 12th October 2016 and 30th March 2017; and
>
> (4) that it appears on the information before the Court that the removal of the child, D.M.S. (b.[date of birth redacted]) from the jurisdiction of England and Wales and his retention outside the jurisdiction is wrongful within the meaning of Article 3 of the Convention on the Civil Aspects of International Child Abduction ("the Hague Convention").

23. On August 1, 2017, Mr. Smith submitted an application to the United Kingdom's International Child Abduction & Contact Unit ("Petitioner's Application for Return") seeking D.M.S.'s return to the United Kingdom.  A true and correct copy of the Petitioner's Application for Return submitted by Mr. Smith to the U.K. Central Authority, is attached hereto as Exhibit K.  The Petitioner's Application for Return was forwarded to the U.S. Central Authority soon thereafter on August 15, 2017.  A true and correct copy of a letter from the United Kingdom's International Child Abduction & Contact Unit forwarding Mr. Smith's Petitioner's Application for Return to the U.S. Central Authority is attached hereto as Exhibit L.

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 9**

24. On August 29, 2017, the United States Department of State sent correspondence to the Respondent informing her that the Government of the United Kingdom had forwarded Mr. Smith's application seeking assistance under the Hague Convention in returning D.M.S. to the United Kingdom. A true and correct copy of that correspondence dated August 29, 2017 is attached hereto as Exhibit M. The letter further informed Respondent that if no response was received by September 12, 2017, or if she elected not to voluntarily return D.M.S. to the United Kingdom, then the State Department would be obligated to continue processing the application and to facilitate the initiation of judicial proceedings by Mr. Smith to have a court in the United States determine the Child's country of habitual residence and where custody should be decided. *Id.* at 2. Respondent continues to refuse to return D.M.S. to the United Kingdom and on information and belief, did not respond to the State Department's correspondence.

25. During the approximately six months since she abducted D.M.S. to the United States, Respondent has temporarily resided at multiple addresses in at least three states, including at a homeless shelter. Respondent has refused to let Mr. Smith know where D.M.S. is, if he is in good health, or if he is enrolled in school. As a result of his abduction, D.M.S. has been further isolated from his father and from his older brother, D.O.S., who has resided with Mr. Smith ever since his mother abandoned him and abducted his younger brother to the United States.

**First Claim for Relief**
(Return Remedy Under the Convention; Removal
and Wrongful Retention of the Child by Respondent)

26. Mr. Smith incorporates paragraphs 1 through 25.

27. The Convention applies to any child who is under 16 years of age and was habitually resident in a Contracting State immediately before being wrongfully removed and retained. Convention, art. 4. D.M.S is currently 15 years old and was 14 years old at the time of the wrongful removal. D.M.S. will achieve the age of 16 next summer.

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 10**

28. As set forth above, on or around May 30, 2017, the Respondent wrongfully removed and retained D.M.S. outside of his habitual residence (the United Kingdom), within the meaning of Article 3 of the Convention and continues to wrongfully retain the Child in the State of Idaho in violation of the Convention and ICARA and despite Petitioner's repeated requests and efforts to have the Child returned to the United Kingdom.

29. On information and belief, the wrongful removal occurred on May 30, 2017 and the wrongful retention occurred when Respondent informed Mr. Smith on June 2, 2017 that she had taken D.M.S. to the United States and refused to return the Child to his habitual residence in the United Kingdom.

30. This Petition is filed less than one year from Respondent's wrongful retention of the Child.

31. Upon information and belief, Respondent is presently keeping the Child at a location in Caldwell, Idaho.

32. Petitioner has never acquiesced or consented to Respondent's retention of the Child outside of the United Kingdom in the United States contrary to the Convention, applicable rulings of the United Kingdom courts, and his custody rights.

33. Specifically, Respondent's removal and retention of the Child outside of the United Kingdom is wrongful within the meaning of Article 3 of the Convention because:

> (a) It is in violation of Mr. Smith's rights of custody as established by British law and specific orders of the courts of the United Kingdom exercising jurisdiction over Petitioner, Respondent, and the Child pursuant to British law;
>
> (b) At the time of Respondent's removal of D.M.S. from the United Kingdom and Respondent's wrongful retention of D.M.S. outside of the United Kingdom, Petitioner was actually exercising his rights of custody within the meaning of Articles 3 and 5 of the Convention and, but for Respondent's removal and wrongful

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 11**

retention of the Child, Petitioner would have continued to exercise those rights; and

(c) The Child was habitually resident in the United Kingdom within the meaning of Article 3 of the Convention immediately before his removal and wrongful retention outside of the United Kingdom by Respondent.

## Relief Requested

WHEREFORE, Petitioner David Neil Smith respectfully requests the following relief:

A.    An immediate temporary restraining order and preliminary injunction:

    i.    Prohibiting the removal of the child D.M.S. from the jurisdiction of this Court pending a determination on the merits of the Petition;

    ii.    Requiring Respondent to surrender any passports or travel documents for D.M.S., to the U.S. District Court in Boise for safe-keeping with the Court during the pendency of this action;

    iii.    Requiring that the Respondent permit Mr. Smith contact with D.M.S. by telephone or video-chat immediately and as often as Mr. Smith desires thereafter, but not less than one-half hour three times per week;

B.    An order pursuant to and consistent with Article 12 of the Convention in favor of Petitioner and ordering the return of D.M.S. to his habitual residence in the United Kingdom;

C.    An order requiring that Respondent pay Petitioner's expenses and costs, including travel expenses to return D.M.S. to his habitual residence in the United Kingdom pursuant to Article 23 of the Convention and 22 U.S.C. § 9001, *et seq.*, and an legal costs and fees pursuant to 22 U.S.C. § 9001, *et seq.*, and Article 26 of the Convention; and

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 12**

D.	Such further relief as is just and that this Court may require.

DATED this 30th day of November 2017.

        HOLLAND & HART LLP


        By /s/Alexandra S. Grande
          Murray D. Feldman
          Alexandra S. Grande

          Attorneys for Plaintiff-Petitioner

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 13**

## VERIFICATION

I, David Neil Smith, declare under penalty of perjury under the laws of the United States of America that I am the Plaintiff-Petitioner in the action set out in the foregoing Petition for Return of Child Pursuant to the Hague Convention, that I have read the Petition and Exhibits attached thereto, know the contents thereof, and that the facts asserted therein are true and correct to the best of my knowledge.

EXECUTED this 30 day of November 2017 at MUNOFORD, NORFOLK, ENGLAND

*DSmith*

David Neil Smith

10367788_1

**VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD - 14**