IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| DAVID NEIL SMITH, Mundford, Norfolk, England, United Kingdom, | |
|---|---|
| Plaintiff-Petitioner, | Case No. 1:17-CV-489-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| VICKIE MICHELLE SMITH, Caldwell, Idaho, United States of America, | |
| Defendant-Respondent. | |

## INTRODUCTION

The Court has before it an *ex parte* application for a temporary restraining order. Plaintiff David Neil Smith asks the Court to, among other things, enjoin his ex-wife, defendant Vickie Michelle Smith, from removing their minor child from Idaho until a hearing can be held to determine whether the child should be returned to England for custody proceedings under that nation's laws. For the reasons explained below, the Court will grant the motion.

## FACTUAL BACKGROUND

The Smiths were married in 1997 and resided in England. There, they had two children, D.O.S. (now age 16) and D.M.S (now age 15). Nearly twenty years later, the marriage broke down and David filed for divorce. The court in England granted primary custody of the children to Vickie while David received visitation rights. Vickie initially filed a motion with the English court to remove the boys permanently from the

**Memorandum Decision & Order – page 1**

jurisdiction but withdrew that motion, *See Order (Dkt. No. 1-5)* at p. 3, and represented to the court, through her solicitor, that "she will not remove the children from the jurisdiction without the agreement of [David Smith]." *See Order (Dkt. No. 1-6)* at p. 2.

In this lawsuit, David alleges that Vickie absconded with D.M.S. to the United States on May 30, 2017, without David's permission, and without approval of the English court. Apparently, Vickie left behind their other child, D.O.S. David alleges that Vickie told him that she "would not be coming back." *See Complaint (Dkt. No. 1)* at ¶ 19. According to David, Vickie and D.M.S. have "temporarily resided at multiple addresses in at least three states, including at a homeless shelter." *Id.* at ¶ 25.

To regain custody of D.M.S., David initiated proceedings in the English court to compel Vickie to return D.M.S. to England. The court did not grant the requested relief because it was unclear whether Vickie had notice of the petition, but the court did grant leave to David to restore his application once Vickie received notice. *See Order (Dkt. No. 1-10)* at p. 2. The court did "note", however, that (1) in earlier proceedings, Vickie had "assured the Court (through her instructed solicitor) that she would not remove the children (or either of them) from the jurisdiction without the agreement of the Applicant father, such assurance being recorded on the face of the order"; (2) that Vickie was "in breach" of the custody orders; and (3) that the "removal of [D.M.S.] from the jurisdiction of England and Wales, and his retention outside the jurisdiction is wrongful within the meaning of Article 3 of the Hague Convention 1980." *Id.* at p. 2.

David alleges that Vickie is now living with D.M.S. in a friends' home in Caldwell Idaho. He fears that she will flee to another state once she hears of this lawsuit, especially given her history of moving state-to-state.

David filed a complaint against Vickie in this Court on November 30, 2017, alleging that her removal of D.M.S. was wrongful under Article 3 of the Hague Convention, and asking for an Order that D.M.S. be returned to England. In David's motion now before the Court, he seeks an *ex parte* temporary restraining order (TRO) enjoining Vickie from removing D.M.S. from Idaho pending a hearing on the complaint's request to return him to England.

## ANALYSIS

To obtain a temporary restraining order, David must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 24 (2008). An evaluation of the first element – the likelihood of success on the merits – turns on a review of the Hague Convention, which Congress implemented through the International Child Abduction Remedies Act (ICARA), designed to address the problem of parental international child abduction. The Signatories perceived that parents were wrongfully taking their children across international lines "in search of a more sympathetic court" for custody proceedings. *Von Kennel Gaudin v. Remis,* 282 F.3d 1178, 1181 (9th Cir. 2002). The Convention sought to eliminate this motivation by allowing for the prompt return of abducted children. *Id.* at 1182.

**Memorandum Decision & Order – page 3**

Under the ICARA, David must show that D.M.S. was "wrongfully removed" by Vickie "within the meaning of the [Hague] Convention." *See* 22 U.S.C. § 9003 (e)(1)(A). The Convention, in Article 3, states that a child's removal is "wrongful" if "it is in breach of rights of custody" under the law of the jurisdiction where "the child was habitually resident immediately before the removal . . . ." *See Hague Conv. Art. 3*. In determining whether Article 3 applies, the Ninth Circuit has held that a court must answer four questions: "(1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?" *Papakosmas v. Papakosmas,* 483 F.3d 617, 622 (9th Cir. 2007).

Based on the record in this case, and the statements of the English court set forth above, it is likely that David will successfully show that (1) D.M.S. was removed in May of 2017; (2) at that time, D.M.S. was habitually residing in England; (2) the removal breached Vickie's assurance to the court that she would not remove D.M.S. without David's consent; and (3) David was exercising his custodial rights at the time of the removal. Because there appears in this record no excuse for Vickie's breach of her assurance to the English court, the equities tip in David's favor. He is likely to suffer irreparable harm if a TRO is not granted given Vickie's history of moving state-to-state, which would prevent any court from obtaining jurisdiction to resolve this dispute.

Finally, an injunction would appear to be in the public interest as it would ensure a forum for resolution of this dispute.

An *ex parte* TRO will only issue in "a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Reno Air Racing Ass'n v. McCord,* 452 F.3d 1126, 1131 (9th Cir. 2006). This is one of those rare cases because of the threat that Vickie could prevent David from ever obtaining a forum for resolution of this dispute. The Court will therefore issue an *ex parte* TRO enjoining her from moving D.M.S. outside Idaho until a hearing can be held on David's preliminary injunction motion. David also requests that she turn over any passports or travel documents but an *ex parte* TRO should be no broader than necessary, and the Court finds that the Order to remain in Idaho should be sufficient. Finally, David requests that the TRO include a term allowing him to telephone or video-chat with D.M.S., and to have Vickie disclose what school he attends, but those requests go beyond the narrow reason for issuing the *ex parte* TRO and will be denied.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for temporary restraining order (docket no. 3) is GRANTED IN PART AND DENIED IN PART. It is granted to this extent: The Child, D.M.S., shall not be removed from the jurisdiction of this Court – that is, from Idaho – pending a determination on the merits of the Petition at the hearing set forth below on December 14, 2017. It is denied in all other respects.

IT IS FURTHER ORDERED, that a hearing be held on plaintiff's motion for preliminary injunction on December 14, 2017, at 10:00 a.m. At the hearing, each side will be allotted a total of 20 minutes of oral argument. No testimony will be allowed but the parties may submit testimony in the form of affidavits.

DATED: December 6, 2017

_____
B. Lynn Winmill
Chief Judge
United States District Court